**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) KENDRA CROCKER and** | ) |
| **(2) ALLEN MORA, as co-guardians of** | ) |
| **ERIC GRANT,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 17-CV-149-TCK-FHM** |
| | ) |
| **(1) VIC REGALADO, in his official capacity,** | ) |
| **(2) STANLEY GLANZ, in his personal capacity,** | ) |
| **(3) BOARD OF COUNTY COMMISSIONERS** | ) |
| **of Tulsa County,** | ) |
| **(4) ARMOR CORRECTIONAL HEALTH** | ) |
| **SERVICES, INC.,** | ) |
| **(5) JANE DOE NO. 1; and** | ) |
| **(6) JANE DOE NO. 2,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court are Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Doc. 15); Motion to Dismiss of Defendants, Vic Regalado, in His Official Capacity, and Stanley Glanz, in His Personal Capacity (Doc. 21); and Defendant Board of County Commissioners' Motion to Dismiss (Doc. 20).

## I.    Factual Allegations and Procedural Background

On March 22, 2017, Plaintiffs Kendra Crocker and Allen Mora, as co-guardians of Eric Grant ("Plaintiffs") filed a Complaint (Doc. 2) against (1) Vic Regalado, in his official capacity as Sheriff of Tulsa County; (2) Stanley Glanz ("Glanz"), who was Sheriff of Tulsa County and head administrator of Tulsa County Sheriff's Office ("TCSO") and the David L. Moss Criminal Justice Center ("Jail") at relevant times; (3) Board of County Commissioners of Tulsa County ("BOCC");

(4) Armor Correctional Health Services, Inc. ("Armor"),  the Jail's health care service provider

while Grant was in custody; (5) Jane Doe No. 1, a booking nurse in the TCSO's booking area; and (6) John Doe No. 2, a detention officer working in the TCSO's booking area.[1]

The allegations relevant to Plaintiffs' claims are set forth in paragraphs 14-40 of the Complaint (Doc. 2.) On or about June 24, 2015, Tulsa County Sheriff Deputy Greg Brown arrested Eric Grant ("Grant") on a non-violent misdemeanor charge of trespassing. When Grant was booked into the Tulsa County Jail, he was suffering from "obvious, known, and serious mental health disorders, including schizophrenia" (*id.* at ¶ 15); however, he received no mental health evaluation or referral. Grant was cleared by the booking staff of TCSO and Armor Correctional Health Services, Inc. ("Armor") to be placed into the Jail.

Grant was placed into a general population cell with a known registered sex offender, Anthony Eugene Williams ("Williams"). Williams "almost immediately" began to harass and threaten Grant. (*Id.* at ¶ 18.) Some of the threats were of a sexual nature. Grant informed the jail personnel about the threats, and for at least a week asked to be transferred to another cell. Grant's guardian, Allen Mora ("Mora"), called the jail and informed TCSO that Grant was in danger and needed to be moved to another cell. However, Jail personnel "failed to change his cell assignment or take any reasonable precautions to prevent the attack." (*Id.* ¶ 19.) Meanwhile, Grant began showing "clear signs of mental health issues," including barking. (*Id.* ¶ 20.) However, medical staff at the Jail failed to ask him "any of the appropriate mental health questions" or to "attempt[] to get Grant the mental health care he required." (*Id.*) Medical staff at the Jail also failed to give Grant medication that he needed. On or about July 7, 2015, Williams "pulled Grant from his bunk and

---

[1] The style of this case identifies the sixth defendant as Jane Doe No. 2. However, the Court notes that the Complaint (Doc. 2) elsewhere refers to a John Doe No. 2, rather than Jane Doe No. 2.

began to brutally assault him." (*Id.* ¶ 21.) During the assault, Grant "was knocked unconscious and brutally raped." (*Id.*) After the assault and rape, Grant was transported to a hospital where a rape kit was administered.

On March 22, 2017, Plaintiffs filed their Complaint asserting (1) 42 U.S.C. § 1983 ("§ 1983") claims against Armor; Glanz, in his personal capacity; Regalado, in his official capacity; BOCC; and Jane Doe No. 1 and Jane Doe No. 2 (the "Doe Defendants"); (2) negligence, against Armor; and (3) violation of the Oklahoma Constitution's prohibition on cruel and unusual punishment under Article II § 9 (as applicable to pretrial detainees through the due process clause, Article II § 7).[2] Plaintiffs allege Grant should not have been placed in a general population cell, but once there, Jail and medical staff "should have been on high alert due to substantial risks to [Grant's] safety." (*Id.* ¶ 23.) Armor filed a motion to dismiss (Doc. 15) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Regalado and Glanz (the "TCSO Defendants") filed a joint motion to dismiss (Doc. 21) pursuant to Rule 12(b)(6), seeking dismissal of the claims asserted against them and against the Doe Defendants. BOCC filed a separate motion to dismiss the claims asserted against it (Doc. 20), pursuant to Federal Rule of Civil Procedure 21 ("Rule 21") and Rule 12(b)(6).

## II. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its

---

[2] The Complaint does not clearly indicate against which Defendants the state constitutional claim is asserted.

face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphasis in original).

The Tenth Circuit has interpreted "plausible," as used by the United States Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla., ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.*

Because complaints in § 1983 cases typically include claims against multiple defendants, "[t]he *Twombly* standard may have greater bite in such contexts." *Id.* at 1249.

4

In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore, it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id.* (emphasis in original); *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 n.9 (10th Cir. 2012) ("To provide adequate notice as to the nature of multiple claims against multiple defendants, a complaint must isolate the allegedly unlawful acts of each defendant.") (internal quotation marks omitted).

## III. Armor's Motion to Dismiss

### A. § 1983 Claim

Armor contends the Complaint does not state a plausible § 1983 claim because Plaintiffs failed to allege facts sufficient to show that Grant suffered a constitutional deprivation. Armor further contends that Plaintiffs cannot sustain a constitutional claim against Armor on a municipal liability theory because (1) Plaintiffs have not identified a policy, procedure, or custom that caused Grant's injury, and (2) Armor is not a final policymaker for the Jail. Armor also seeks dismissal of any claim for punitive damages.[3]

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011) (emphasis added). This claim has four elements: (1) a violation of rights protected by the U.S. Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct

---

[3] Armor's Motion to Dismiss also argues that Plaintiffs cannot hold Armor vicariously liable for their § 1983 claims. Plaintiffs note in their response that they are not asserting their § 1983 claim against Armor on a vicarious liability theory. Accordingly, the Court disregards this argument as moot.

of a person (4) who acted under color of law. *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The duty to provide medical care extends to inmates' psychiatric needs. *See, e.g., Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). In addition, under the Eighth Amendment, prison officials are required to "provide humane conditions of confinement[] . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 831, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). These rights extend to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("*A fortiori*, pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners").

"Our cases recognize two types of conduct constituting deliberate indifference. First a medical professional may fail to treat a serious medical condition properly. . . . The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." In both cases, the test for deliberate indifference has an objective and subjective component. *Id.* The objective component concerns whether the alleged harm is sufficiently serious, while the subjective component requires inquiry into the state actor's culpability. *Mata*, 427 F.3d at 753. Armor does not argue that Grant's injury is not sufficiently serious, and the Court presumes this component is

satisfied. *See Poore v. Glanz*, No. 11-CV-797-CVE-TLW, 2012 WL 1536933, at *3 (N.D. Okla. Apr. 30, 2012) ("Allegations of rape and sexual assault are sufficiently serious to satisfy the objective component of a deliberate indifference claim.") (citing *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)).

Armor contends Plaintiffs' factual allegations establish, at the most, medical negligence by Armor, not deliberate indifference. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Farmer*, 511 U.S. at 837. The subjective prong is satisfied if the official knows of and disregards an excessive risk to inmate health or safety. *Maza*, 427 F.3d at 752. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Intent can be demonstrated through circumstantial evidence, such as the fact that the risk is obvious. *Maza*, 427 F.3d at 752.

Essentially, Plaintiffs allege Armor's booking staff failed to perform a gatekeeping role for other medical personnel capable of assessing and treating Grant's mental health condition. (*See* Pl.'s Resp., Doc. 28, at 8.)[4] The Complaint alleges Armor was responsible "for providing medical and

---

[4] Although not clearly stated in the Complaint, Plaintiffs appear to allege two theories of deliberate indifference: (1) indifference to Grant's medical needs relating to his mental health, resulting in his placement in a general population cell with a registered sex offender; and (2) indifference to his mental health needs and safety after he was placed in the Jail, by failing to provide protection from assault and rape by Williams. Consistent with Plaintiffs' response brief,

mental services and medication to Mr. Grant while he was in the custody of TCSO[,] . . . [and] for creating and implementing policies, practices, and protocols that govern the provision of medical and mental health care to inmates at the Tulsa County Jail, and for training and supervising its employees." (Compl. ¶ 5.) Plaintiffs allege Grant had "serious and obvious mental health needs." (*Id.* ¶ 16.) However, he "was cleared, by TCSO and Armor booking staff to enter the Jail," and "received no mental health evaluation or referral and was placed in general population." (*Id.*)

A prison medical professional, such as a booking nurse, who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if he or she "delays or refuses to fulfill that gatekeeper role." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The Complaint alleges that when Grant was booked into the Jail, he was "suffering from obvious, known, and serious mental health disorders, including schizophrenia[]" and "was in an obviously vulnerable state." (Compl., ¶ 15.) However, there are no facts alleged to suggest deliberate indifference on the part of Armor or its employees–for example, there is no allegation that staff were informed Grant was schizophrenic or needed medications. The Complaint does not allege

_____

the Court addresses only the first theory with respect to Armor, relating to the decision to book Grant into the jail and into general population. However, the Court notes that there are insufficient allegations to show that anyone at Armor was deliberately indifferent to Grant's need for mental health care or protection once he was placed into the jail. There is no allegation that Armor was involved in Grant's specific cell assignment, or that any Armor personnel were informed of Grant's reporting of being threatened by Williams or requests to be reassigned to a different cell. Although the Complaint alleges that Grant began barking, and that Mora informed jail personnel about threats to Grant by Williams, there is no allegation that anyone at Armor knew or had reason to know these facts. *See Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 U.S. Dist. Lexis 38466, at *45 (N.D. Okla. March 24, 2016) (noting that any allegations that contracted medical providers failed to monitor plaintiff to prevent seizures "is the type of general allegation that does not provide any plausible basis for recovery," where complaint "vaguely alleg[ed] that 'medical and correctional staff should have been on high alert.'")

*how* it was obvious that Grant was schizophrenic or vulnerable to sexual assault. These conclusory and general factual allegations are insufficient to support an inference of deliberate indifference by Armor.

*Sealock*, which Plaintiffs cite, does not change this analysis. There, the Tenth Circuit reversed summary judgment, finding that a fact issue existed as to whether a physician's assistant ("PA") was deliberately indifferent or merely negligent in failing to call an ambulance where a prisoner presented evidence that the PA knew he had unexplained chest pain. Here, there is no summary judgment record, only the allegations in the Complaint. The Complaint does not allege that any Armor employee knew facts supporting an inference of "a substantial risk of serious harm" or actually drew such an inference. *Farmer*, 511 U.S. at 837. Accordingly, the Court finds that with respect to Plaintiffs' deliberate indifference claim against Armor, the Complaint fails to "nudge [Plaintiffs'] claim[] across the line from conceivable to plausible." *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).[5] Because the Court finds Plaintiffs have not alleged a plausible Fourteenth Amendment violation against Armor, it need not proceed to Armor's remaining arguments respecting Plaintiffs' § 1983 claim.

---

[5] As against Armor, this case is distinguishable from *Fisher*, where the undersigned allowed claims to proceed under a gatekeeper theory. The plaintiff alleged that a detention officer, Officer Morataya, violated the constitutional rights of a mentally retarded inmate. The Court noted numerous factual allegations supporting an inference that Morataya had knowledge of the inmate's need for seizure medication and disregarded a substantial risk of harm to him by failing to pass that information along. 2016 U.S. Dist. Lexis 38466, at *17-*18 (noting allegations that Morataya was present at the Jail when inmate was booked by another officer, who knew of inmate's need for seizure medication and noted on booking form that inmate was mentally disabled and currently taking prescription medications; and that Morataya was at the Jail when inmate's family and caseworker called regarding his need for anti-seizure medication).

### B.  State Law Claims

#### 1.  Statute of Limitations

Armor contends Plaintiffs' claims of negligence and violation of the Oklahoma Constitution are barred under title 12, § 95(a)(11) of the Oklahoma Statutes, which sets a limit of one year from accrual of a cause of action on "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of" the state or one of its subdivisions. However, the Oklahoma Governmental Tort Claims Act ("OGTCA") requires that a claim be "denied in whole or in part" before a plaintiff may initiate a lawsuit. Okla. Stat. tit. 51 § 157.[6] Therefore, a claim under the OGTCA does not accrue until the claim is denied or deemed denied by the state or relevant political subdivision. *See Brown v. Creek Cty. ex rel. Creek Cty. Bd. of Cty. Comm'rs*, 164 P.3d 1073, 1076 (Okla. 2007).

Armor cites *Fisher*, where this Court held that § 95(A)(11) governed inmates' state constitutional claims, rather than the generally applicable two-year statute of limitations in § 95(A)(3). However, the only state law claim in *Fisher* arose under the Oklahoma Constitution, and accrued before the Oklahoma legislature amended OGTCA to include claims brought under the Oklahoma Constitution. Accordingly, OGTCA was not part of the Court's statute of limitations analysis there. Oklahoma courts have made clear that where there is an apparent conflict between the one-year limitation period under § 95(A)(11) and the notice/exhaustion provision of OGTCA, the latter controls. *See Brown v. Creek Cty. ex rel. Creek Cty. Bd. of Cty. Comm'rs*, 164 P.3d 1073,

---

[6] Since April 21, 2014, the OGTCA has included claims brought under the Oklahoma Constitution.

1076 (Okla. 2007). Armor provides no evidence that Plaintiffs' claims are untimely under OGTCA. Accordingly, the Court will not dismiss Plaintiffs' state law claims on this ground.

### 2. Foreseeability

Armor contends an attack such as the assault and rape of Grant is "unforeseeable and unnatural," even in a jail setting, and therefore does not give rise to a negligence claim. (Pls.' Reply, at 7). The Court finds this argument unconvincing. It defies credulity to suggest jail booking staff are unaware of the risk that some individuals may be especially vulnerable to this type of injury. *See Cox v. Glanz*, 800 F.3d 1231, 1251 n.11 (10th Cir. 2015) (noting that "the risk of sexual assault . . . frequently may be divined from a myriad of external factors"); *see also* Nat'l Prison Rape Elimination Comm'n, NAT'L PRISON RAPE ELIMINATION COMM'N REPORT, at 70-74 (2009), *available at* http://nprec.us/files/pdfs/NPREC_FinalReport.PDF (discussing factors that make individuals susceptible to abuse, including mental disability and mental illness); Katherine Robb, *What We Don't Know Might Hurt Us: Subjective Knowledge and the Eighth Amendment's Deliberate Indifference Standard for Sexual Abuse in Prisons*, 65 N.Y.U. ANN. SURV. AM. L. 705, 708 (noting that while "courts typically focus . . . on the attributes of the alleged aggressor in order to determine whether subjective knowledge of risk existed, . . . research shows that victim attributes are better indicators of the potential risk of sexual abuse").

In light of the widely recognized risk of sexual violence against certain inmates, the Court finds the Complaint sufficiently alleges that Armor, as the Jail's health-care and mental health care provider, negligently failed to ensure that Grant received the mental health treatment he required, and that his alleged injury was a foreseeable result of this failure. Accordingly, Plaintiffs have stated a plausible claim of negligence against Armor.

### 3. Immunity under Oklahoma Governmental Tort Claims Act

Armor contends it is immune from tort liability because it is an "employee" of the State of Oklahoma under OGTCA. *See* Okla. Stat. tit. 51, § 152.1(A) ("The state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability."). The definition of "employees" under OGTCA includes "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." *Id.* § 152(7)(b)(7). Consistent with previous opinions by the undersigned, the Court finds that it is premature to decide this issue because the Court lacks evidence regarding the specific contractual relationships between Armor and/or its employees with Tulsa County and/or TCSO. *See Birdwell v. Glanz*, No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *6 (N.D. Okla. May 6, 2016) (citing *Revilla*, 8 F. Supp. 3d at 1345 (denying motion to dismiss because "it is premature to determine whether § 152(7)(b)(7) covers CHC's employees and/or CHC" due to absence of record evidence regarding privity of contract)).[7]

## IV. TCSO Defendants' Motion to Dismiss

### A. Underlying Constitutional Violation

TCSO Defendants argue first that the Complaint does not state a plausible constitutional violation. TCSO Defendants rely primarily on *Plummer v. Town of Dickson*, No. 13-CV-92-JHP, 2013 WL 2367829 (N.D. Okla. May 29, 2013); however, their discussion of *Plummer* is both difficult to follow and seriously flawed. TCSO Defendants correctly note that Judge Payne

---

[7] Armor's motion to dismiss challenges Plaintiffs' claim under the Oklahoma Constitution only on the grounds of statute of limitations and immunity. Because the Court has rejected both of those arguments, any claim Plaintiffs may assert against Armor under the Oklahoma Constitution remains. The parties did not brief the issue of whether the Oklahoma Constitution may provide broader protection than the U.S. Constitution, and the Court does not reach this issue.

dismissed § 1983 and state law claims in a case alleging a police officer wrongfully arrested and sexually propositioned the plaintiff, and suggest that dismissal is even more warranted in this case because the wrongful conduct alleged here was committed by a third party, not a member of law enforcement. The clear implication of this argument is that Judge Payne's dismissal of claims in *Plummer* was at least partially based on a failure to establish either causation or the subjective component of a deliberate indifference claim. However, the dismissed claims in *Plummer* were found insufficient for reasons unrelated to causation of plaintiff's constitutional injury or to the officer's state of mind. *See id.* at *2 (dismissing police department because it is not a suable entity under Oklahoma law); *id.* at *4 (dismissing claims for cruel and unusual punishment because such prohibitions only apply to those convicted of a crime or being held for trial, and plaintiff had only been arrested but not booked into jail); *id.* at **4-5 (dismissing certain intentional tort claims against the city because the intent requirement of those torts means the employee could not have been acting "in good faith" in the scope of his employment, which is required to hold the city liable under Oklahoma Governmental Tort Claims Act). Nowhere does the court indicate that the police officer did not have a sufficiently culpable state of mind or that plaintiff could not show causation of her injury. Furthermore, the court allowed plaintiff's § 1983, negligence, and false arrest claims against the city to proceed. Therefore, *Plummer* does not support TCSO Defendants' position.

Plaintiffs have alleged sufficient facts to support an inference that TCSO Defendants acted with deliberate indifference. For example, they allege Grant informed Jail personnel about threats Williams made against him, and asked to be transferred to a different cell. In addition, Mora allegedly called to inform TCSO that Grant was in danger and needed to be moved. The Complaint also alleges that while Grant was incarcerated, he began to show signs of mental illness, including

barking. (Compl. ¶ 20.) Viewed in the light most favorable to Plaintiffs, these alleged facts support a plausible inference that Jail employees had knowledge of Grant's mental health condition and yet failed to take measures (1) to secure evaluation and treatment of his condition and (2) to provide reasonable protection from harm. Accordingly, with respect to TCSO Defendants, the Complaint satisfies the subjective prong of Plaintiffs' deliberate indifference claim.

### B.   Glanz - Individual Capacity

TCSO Defendants contend Glanz is subject to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). In order to survive a motion to dismiss based on qualified immunity, a plaintiff must "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. "This requires enough allegations to give the defendants notice of the theory under which their claim is made," but "does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (internal quotation omitted).

TCSO Defendants do not argue that the alleged violation of Grant's constitutional rights was not clearly established. Accordingly, the Court's analysis focuses only on the first element of qualified immunity: whether the alleged facts show that Glanz plausibly violated Grant's Fourteenth

Amendment rights.[8] First, TCSO Defendants contend that in order to hold Glanz individually liable Plaintiffs must show Glanz had personal contact, knowledge, or involvement with either Grant or Williams. The Court rejects this argument, as it has previously in the context of a failure-to-treat claim. *See Fisher*, 2016 U.S. Dist. Lexis 38466, at *40 (noting that "inmate-specific" knowledge requirement set forth in *Cox*, 800 F.3d at 1250, is limited to jail-suicide context and holding inmate who was not given seizure medication was not required to show sheriff's personal knowledge of plaintiff's situation to allege supervisory liability claim).

To establish a claim of supervisory liability under § 1983, a plaintiff must plead and ultimately prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (addressing supervisory liability in context of qualified immunity defense raised by sheriff). Supervisors "may be liable under § 1983 where an affirmative link exists between the unconstitutional acts by their subordinates and their adoption of any plan or policy–express or otherwise–showing their authorization or approval of such misconduct." *Id.* at 1199-1200 (alterations and quotations omitted). Stated differently, § 1983 liability may be imposed upon individual supervisors who "act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the

_____

[8] As this Court has explained previously, the Fourteenth Amendment's guarantee of due process, rather than the Eighth Amendment's prohibition on cruel and unusual punishment, is applicable to pretrial detainees alleging deliberate indifference to their medical needs. *See Fisher*, 2016 U.S. Dist. Lexis 38466, at *32 (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). Accordingly, the Court construes TCSO Defendants' reference to an Eighth Amendment violation as intended to refer to Plaintiffs' Fourteenth Amendment due process claim.

continued operation of policies that cause the deprivation of persons' federally protected rights." *Id.*

A supervisor must be found to have "direct personal responsibility" for the harm and must have

committed a deliberate, intentional act. *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010).

There is no dispute that Glanz was at all relevant times the final policymaker at the Jail. *See*

*Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) (citing Okla. Stat. tit. 19, § 513; Okla. Stat.

tit. 57, § 47); *Estate of Crowell ex rel. Boen v. Board of County Comm'rs of Cty. of Cleveland*, 237

P.3d 134, 142 (Okla. 2010). Thus, the first prong of supervisory liability is satisfied for the purpose

of Rule 12(b)(6). Regarding the second prong, for reasons set forth *supra* Part III.B.2, the Court

finds the Complaint alleges facts that suggest Grant may have been particularly vulnerable to assault

and/or sexual assault, and therefore plausibly establish causation.

Regarding the third prong, TCSO Defendants contend the Complaint fails to establish the

*mens rea* required for supervisory liability as to Glanz. Plaintiffs allege that Glanz exhibited

deliberate indifference to inmates' medical needs because he was aware of, and failed to take

reasonable steps to address, risks to inmates caused by deficiencies in the Jail's medical system.

(Compl. ¶ 41.) The Court finds that the Complaint supports a plausible inference that Glanz was

aware of systemic deficiencies in medical care prior to the assault on Grant, including but not limited

to: (1) two audits completed by the National Commission on Correctional Health Care in 2007 and

2010, both of which allegedly identified widespread problems with physical and mental health care

provided to inmates, including the failure to perform mental health screenings and failure to

complete mental health treatment plans, and the latter of which resulted in the Jail being placed on

probation; (2) one audit completed by the U.S. Department of Homeland Security's Office of Civil

Rights and Civil Liberties finding that there existed a prevailing attitude of indifference among the

medical staff of the Jail; and (3) a third audit completed by the Jail's own retained medical auditor, which found, *inter alia*, "[documented] deviations [from protocols which] increase the potential for preventable morbidity and mortality." (*Id.* ¶¶ 27-40.)   Further, the Complaint alleges a "well-established policy, practice and/or custom of understaffing the Jail[;] failing to adequately assess, treat and supervise inmates with serious mental health needs[;] and overcrowding the Jail and failing to protect inmates with serious mental health needs." (*Id.* ¶ 42.)[9]  These allegations are sufficient to state a plausible claim for supervisory liability against Glanz based on his own intentional conduct of creating policies and/or ignoring risks identified by auditors, which could be deemed causes of the alleged violation. *See Maza*, 427 F.3d at 752 ("The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and then actually draw the inference.").

The Court rejects TCSO Defendants' argument that *Dodds* counsels a different result.  In *Dodds*, an arrestee alleged his Fourteenth Amendment due process rights were violated when he was denied the opportunity to post bail.  In *Dodds*, the Tenth Circuit examined *Iqbal*'s holding that in order to plead a § 1983 claim "arising from . . . superintended responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (citing *Iqbal*, 129 S.Ct. at 1949.) The court concluded that although it remained uncertain "what allegations of personal involvement and mental state do meet *Iqbal*'s

---

[9]  TCSO Defendants argue that any mistreatment of Grant could not have been pursuant to TCSO policy because the Complaint alleges the Jail staff's treatment of Grant *violated* TCSO policy. (*See* Compl. at ¶ 16.)   However, the Court disagrees that this somehow exempts Glanz from supervisory liability; it is clear that Plaintiffs allege Grant's injury arose because of systemic practices which plausibly could have included a failure to follow certain enacted policies.

stricter liability standard," *id.* at 1199, "§ 1983 allows a plaintiff to impose liability on a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Id.* (citing 42 U.S.C. § 1983) (alterations in original).

Applying *Iqbal*, the Tenth Circuit rejected the sheriff's argument that he could not be held liable under § 1983 because he did not personally participate in the alleged violation. The court reasoned that "Defendant may not have personally informed Plaintiff or the individuals who inquired on his behalf that he could not post the preset bail until he had seen a judge. And, Defendant may not have actually known of his subordinates' enforcement of those policies with regard to Plaintiff in particular. Nonetheless, Defendant admits to the existence and operation of the policies of not allowing felony arresters to post lawfully set bail after hours or until they had seen a judge. . . ." *Id.* at 1202-03. The court noted that "as Defendant's counsel conceded at oral argument, Oklahoma law made Defendant responsible for the policies that operated and were enforce by his subordinates at the jail. And under his watch, as he admits, the policies which caused Plaintiff's constitutional injury continued to operate." Thus, "Defendant may have played more than a passive role in the alleged constitutional violation–he may have deliberately enforced or actively maintained the policies in question at the jail. Plaintiff has thereby presented facts that establish personal involvement by Defendant in the alleged constitutional violation sufficient to satisfy § 1983." *Id.* at 1204. Unlike in *Dodds*, the applicable standard here is whether Plaintiffs plausibly alleged deliberate indifference, not whether a genuine issue of fact remains. As noted *supra*, the Complaint alleges facts supporting an inference that TCSO Defendants knew, or should have known, of policies

and practices that presented a substantial risk of injury to inmates like Grant, and thus played more than a passive role in the alleged violation.

TCSO Defendants also contend Plaintiffs have failed to identify a specific policy or custom over which Glanz was responsible that led to the alleged violation. The district court's opinion in *Estate of Guerrero v. Crowther*, No. 16-CV-857-DS, 2017 WL 1288565 (D. Utah Apr. 6, 2017), which TCSO Defendants cite for this argument, is both non-binding and distinguishable. In *Guerrero*, an inmate was assaulted by another inmate. The deceased inmate's estate sued the prison warden and other defendants, alleging *inter alia* that the warden knew violent inmates have a greater propensity to assault other inmates and that he failed to provide adequate policies, procedures, or training to staff to prevent inmates from assaults by other inmates. The Court found the Plaintiff's allegations "offer nothing but generalities, devoid of supporting factual allegations." 2017 WL 1288565, at *3. In contrast, as set forth *supra*, the Court finds the Complaint's allegations are adequate to give notice to Glanz of the theory on which Plaintiffs' claim is made.

For the reasons set forth above, the Court finds the Complaint plausibly alleges that Glanz violated Grant's clearly established constitutional rights. Accordingly, Glanz is not entitled to be dismissed based on official immunity at this stage.

### C. Regalado - Official Capacity

A claim against Regalado in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, that is, Tulsa County. *Porro*, 624 F.3d at 1328. A county or municipality may not be held liable under § 1983 simply because its employees inflict a constitutional injury. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Instead, a plaintiff must show: (1) the existence of a municipal policy or custom, and (2) that there

is a direct causal link between the policy or custom and the injury alleged. *Hinton*, 997 F.2d at 782 (10th Cir.1993) (citation omitted). A municipal policy or custom can include formal regulations or policies; informal customs amounting to widespread practices that are so permanent as to constitute a custom or usage; decisions by final policymakers; ratification of employees' decisions by a final policymaker; and failure to train or supervise, so long as failure results from deliberate indifference. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

The Court finds that read in the light most favorable to Plaintiff, the Complaint alleges policies, widespread practices, and failures to remedy known risks posed by inadequate medical care of inmates that bear a sufficient causal link to the alleged deprivation of Grant's constitutional rights. For example, the Complaint alleges that Tammy Harrington, R.N., a former Director of Nursing at the Jail, observed a chronic failure to triage inmates' requests for medical and mental health assistance. Furthermore, the Jail's own auditor found "[documented] deviations from protocols which] increase the potential for preventable morbidity and mortality." (Compl. ¶ 39.) The same audit found "[d]elays for medical staff and providers to get access to inmates," "[n]o sense of urgency to see patients, or have patients seen by providers," and "[n]ot enough training or supervision of nursing staff." (*Id.* ¶ 40.)

The Court finds that for the purpose of Rule 12(b)(6), Plaintiffs have "identif[ied] a specific deficiency that was obvious and 'closely related' to [Grant's] injury, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro*, 624 F.3d at 1328 (internal citations and quotations omitted). Additionally, the Complaint alleges that Jail staff were informed, by both Grant and Mora, that Grant was in danger. Combined with the Complaint's allegations that Grant was not provided

20

with any mental health evaluation, was not given his medication, and exhibited clear signs of mental illness, including barking, these allegations establish a plausible causal link with Grant's alleged injury. Accordingly, for the purpose of Rule 12(b)(6), the Complaint's allegations are sufficient to state a § 1983 claim against Regalado in his official capacity.

### D. TCSO Defendants (Regalado) - Oklahoma Constitutional Claim[10]

TCSO Defendants contend Plaintiffs' third claim for relief, based upon Article II § 9 of the Oklahoma Constitution, prohibiting cruel and unusual punishment, and Article II § 7, the due process clause, are barred by the OGTCA, which expressly immunizes state and political subdivisions from liability arising from the operation of a jail facility. However, Plaintiffs contend their allegations under the Oklahoma Constitution are made pursuant to *Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994, 997 (Okla. 2013). In *Bosh*, the Oklahoma Supreme Court held that Article II § 30 of the Oklahoma Constitution, which prohibits unreasonable searches or seizures, provides a private cause of action for excessive force when a plaintiff does not have a remedy under OGTCA. *Id.* at 996; *see also Howard v. Grady Cty. Crim. Just. Auth.*, 394 P.3d 299 (Okla. Civ. App. 2016).

The parties did not extensively brief the question of whether *Bosh* extends to other provisions of the Oklahoma Constitution. TCSO Defendants cite case law stating that "no court has specifically held *Bosh* is applicable to claims of deliberate indifference to serious medical needs." *Martin v. Bliss*, 2016 WL 7046766, at *5 (E.D. Okla. 2016); *Lawson v. Okmulgee Cty. Crim. Just. Auth.*, No. 15-CV-300-FHS, 2016 WL 2864421, at *2 (E.D. Okla. May 13, 2016); *see also Howard*, 394 P.3d at 302 & n.3 (noting Oklahoma and federal court opinions reaching different conclusions

---

[10] Plaintiffs' response brief indicates that their claim under the Oklahoma Constitution is asserted against Regalado, and does not attempt to support a state constitutional claim against Glanz.

on whether a private cause of action is available under *Bosh* for constitutional violations other than excessive force).  However, the scope of *Bosh* remains an area of uncertainty within Oklahoma law.  *See Petty v. Dep't of Human Servs.*, No. 16-CV-109-GKF-FHM, 2016 WL 3211965, at *5 (N.D. Okla. June 9, 2016) (declining to exercise supplemental jurisdiction because application of *Bosh* to state due process claim "raises a novel or complex issue of State law") (citing 28 U.S.C. § 1367(c)(1)).  The Oklahoma Court of Criminal Appeals has suggested *Bosh* provides a broader cause of action for violations of constitutional rights other than excessive force.  *See GJA v. Okla. Dept. Of Human Servs.*, 347 P.3d 310 (Okla. Civ. App. 2015) ("The *Bosh* case is not limited to its facts and specific holding.  It does stand for the proposition that the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights."); *see also Lawson*, 2016 WL 2864421, at *2 (citing *GJA*); *but see Koch v. Juber*, No. CIV-13-750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (concluding *Bosh* "should be narrowly interpreted and applied only to excessive force claims").  The undersigned has previously concluded that *Bosh* extends to claims for unreasonable search and seizure under art. II, § 30 of the Oklahoma Constitution.  *White v. City of Tulsa*, 979 F. Supp. 2d 1246 (N.D. Okla. 2013).  The Court holds that for the purpose of its Rule 12(b)(6) analysis, there is sufficient authority and persuasive case law for Plaintiffs to maintain a *Bosh* claim based on the cruel and unusual punishment provision of the Oklahoma Constitution, as applied to pretrial detainees through the due process clause.  *See GJA*, 347 P.3d 310; *accord Halley v. Okla. ex rel. Okla. State Dep't of Human Servs.*, 176 F. Supp. 3d 1268, 1275-76 (E.D. Okla. 2015) (holding that *Bosh* extends to due process claims under art. II, § 7 of the Oklahoma Constitution).

Finally, TCSO Defendants contend Plaintiff has not alleged a plausible violation of the Oklahoma Constitution, citing reasons similar to those set forth in opposition to Plaintiffs § 1983 claim. However, the Court has rejected those arguments and held that Plaintiffs may proceed with their § 1983 claim against TCSO Defendants. Because the due process clause in the Oklahoma Constitution offers protections at least as broad as those under the Fourteenth Amendment, *see Daffin v. State*, 251 P.3d 741, n.20 (Okla. 2011), the Court finds Plaintiffs have also alleged a plausible state constitutional violation against Regalado.

### E. Exhaustion of Administrative Remedies

TCSO Defendants argue that all of Plaintiffs' claims are subject to dismissal for failure to exhaust administrative remedies under the federal Prisoner Litigation Reform Act ("PLRA") and Oklahoma statutory exhaustion requirements.[11] TCSO Defendants contend, without citing any evidence, that Plaintiffs have failed to exhaust any and all administrative remedies on behalf of Grant. However, failure to exhaust under PLRA is not a pleading requirement. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) (noting that under *Jones*, plaintiff "no longer has the duty of pleading exhaustion, and therefore it is no longer appropriate for the district court to require an affirmative showing of exhaustion at this stage of the case"). Furthermore, TCSO Defendants do not dispute that they bear the burden of proof to show that "(1) administrative remedies were, in fact, available," and "(2) [Grant] failed to exhaust these remedies." *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). TCSO Defendants have not met this burden, and accordingly their administrative exhaustion argument falls short.

---

[11] Plaintiffs correctly note that federal procedural rules govern this case, even to the extent state law claims are asserted. Accordingly, the Court's analysis is limited to the PLRA.

### F.       Dismissal of Doe Defendants

TCSO Defendants correctly note that the naming of the Doe Defendants in Plaintiffs' Complaint has no legal effect. *See Madoux v. City of Norman*, No. 07-CV-0435, 2008 WL 938596, at *3 (W.D. Okla. Apr. 4, 2008); *see also Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004) (noting "familiar law" that a plaintiff cannot circumvent statute of limitations by naming a John Doe defendant) (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam)). Plaintiffs' only response is that it is unnecessary to dismiss the Doe Defendants before the statute of limitations has run on Plaintiffs' claims. However, that argument runs counter to the authority cited above. Accordingly, the Court dismisses all claims asserted against Jane Doe No. 1 and Jane Doe No. 2.

## V.       BOCC's Motion to Dismiss

BOCC contends that (1) BOCC is an unnecessary party subject to dismissal under Rule 21 because Regalado has been sued in his official capacity based on the same facts; (2) BOCC has no *respondeat superior* liability because the Sheriff, not BOCC, is the final policymaker at the Jail; and (3) Plaintiffs failed to exhaust administrative remedies. BOCC also argues for dismissal because the Complaint fails to allege sufficient facts regarding BOCC's conduct to provide it with notice of the basis for the claims against it.

As against BOCC, Plaintiffs appear to allege a violation of the Oklahoma Constitution alternatively under either OGTCA or *Bosh*. BOCC asserts immunity under OGTCA for a claim arising from "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner[.]" Okla. Stat. tit. 51, § 155(25). BOCC contends Regalado is the proper defendant because the Sheriff is the final policymaker at the Jail and Plaintiffs' official-capacity *Bosh* claim

against Regalado serves the same function as a claim against BOCC. *See Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) ("Suit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents and is an attempt to impose liability upon the governmental entity.").

Plaintiffs are silent as to BOCC's claim of immunity under OGTCA. However, Plaintiffs argue–with merit–that they may be required to name BOCC as a party to any claim asserted under the Oklahoma Constitution. The OGTCA provides that the state or political subdivision's liability under OGTCA "shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise." Okla. Stat. tit. 51 § 153(B). The OGTCA provides that "[s]uits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ." Okla. Stat. tit. 51 § 163(C). Accordingly, even if Plaintiffs only intend to assert a *Bosh* claim (which by definition is unavailable if a remedy is available under OGTCA), that claim could be subject to dismissal unless Plaintiffs adhere to procedural requirements of the OGTCA. Plaintiffs sensibly named BOCC in their Complaint, even if doing so results in redundant claims against the county and sheriff.

BOCC, like the other Defendants, contends the Complaint fails to state a plausible claim of deliberate indifference.[12] BOCC cites *Howard*, 394 P.3d at 304-05, where the Oklahoma Court of

---

[12] In their response, Plaintiffs contend they are not asserting a § 1983 claim against BOCC. The Court notes that the Complaint could be read to state otherwise. (*See* Compl. at 11 (asserting allegations "[a]pplicable to [a]ll Defendants")). The Court therefore construes Plaintiffs' response as a withdrawal of their § 1983 claim against BOCC, and such claim is dismissed.

Civil Appeals dismissed a deliberate indifference claim alleged by an inmate who was assaulted by another inmate. The plaintiff alleged the jail had failed to properly administer psychotropic medication to the assailant, which led him to trade medication with other inmates, leaving him improperly medicated and with a higher propensity for aggression. BOCC notes that certain allegations are similar to those here, such as the failure to conduct mental health evaluation and to provide needed medication. However, the distinctions are more compelling. In *Howard*, the court found the allegations insufficient to show deliberate indifference, noting that the plaintiff had not alleged that jail employees were aware the assailant posed a substantial risk to the victim without proper medication. Here, in contrast, Plaintiffs have alleged specific facts supporting an inference that Jail employees knew of and disregarded a substantial risk to Grant. Accordingly, as explained elsewhere in this Opinion, the Court finds that Plaintiffs have alleged sufficient facts to support a claim of deliberate indifference.

BOCC also contends the Complaint only specifically mentions BOCC in one paragraph and does not state sufficient facts to give BOCC notice of the grounds for Plaintiffs' claim against it. The Complaint includes the following relevant allegations as to BOCC:

> Defendant [BOCC] is a statutorily-created governmental entity. 57 Okla. Stat. § 41 provides that "[e]very county, by authority of the board of county commissioners and a the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed."
>
> * * *
>
> Bad medical and mental outcomes have persisted due to inadequate supervision and training of medical staff, and due to the contractual relationship between BOCC/TCSO/Sheriff Glanz and ARMOR (which provides financial disincentives the transfer of inmates in need of care from an outside facility).

(Compl. ¶¶ 4, 41.)

Plaintiffs seek to hold BOCC vicariously liable for the alleged constitutional violation.[13] However, BOCC contends it is not vicariously liable for any constitutional violation because it does not employ the Sheriff or Jail personnel and has no control over their actions or inactions. BOCC cites *Bryson*'s holding that a county could not be held vicariously liable for the torts of a detention officer. *Bryson*, 261 P.3d at 632-33. BOCC further contends that its contractual relationship with Armor does not give rise to liability for the acts or omissions of Armor's medical personnel, and BOCC is not responsible for training or supervising Armor personnel. BOCC cites Okla. Stat. tit. 51, § 155(18), which states:

> The state or a political subdivision shall not be liable if a loss or claim results from: [a]n act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers or of a person other than an employee of the state or political subdivision at the time the act or omission occurred.

The Court finds that, viewed in the light most favorable to Plaintiffs, the Complaint alleges sufficient facts to state a vicarious liability claim against BOCC. The Court notes the *Bryson* court's finding that a particular detention officer was not an employee of the county. However, the court's decision in *Bryson* was based on the court's review of the record to conclude that the detention officer was employed by the county sheriff's office and not by the county. *Bryson*, 261 P.3d at 632-33. Here, the Court does not have sufficient evidence at this stage to determine the nature of the contractual relationships at issue. As it did in *Birdwell*, the Court concludes it is premature at this stage to resolve the issue of Armor's independent contractor status for the purpose of BOCC's immunity defense. *See Birdwell*, 2016 WL 2726929, at *9.

---

[13] Respondeat superior liability may be alleged under both OGTCA and *Bosh*. *See Speight,* 203 P.3d at 179; *Bosh*, 305 P.3d at 1004.

The Court also finds no need to dismiss BOCC based on its remaining arguments. BOCC contends Plaintiffs failed to state a plausible *Bosh* claim for excessive force because Grant was injured by another inmate, not a jailer. However, as explained *supra* Part IV.D, Plaintiffs' *Bosh* claim is not based on the use of excessive force. Instead, Plaintiffs contend BOCC is vicariously liable under *Bosh* for the alleged violation of Grant's rights under Article II § 9 (prohibition on cruel and unusual punishment) and Article II § 7 (due process) of the Oklahoma Constitution. Finally, the Court has analyzed and rejected administrative exhaustion arguments similar to BOCC's elsewhere in this Opinion. Accordingly, BOCC is not entitled to dismissal of Plaintiffs' state constitutional claim.

## VI. Conclusion

Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Doc. 15) is GRANTED in part and DENIED in part. Armor's motion is granted as to Plaintiffs' § 1983 claim against it, and denied as to Plaintiffs' state law claims against it.

The Motion to Dismiss of Defendants, Vic Regalado, in His Official Capacity, and Stanley Glanz, in His Personal Capacity (Doc. 21) is GRANTED in part and DENIED in part. TCSO Defendants' motion is granted in that Jane Doe No. 1 and Jane Doe No. 2 are dismissed, and denied as to Plaintiffs' claims against Glanz and Regalado.

Defendant Board of County Commissioners' Motion to Dismiss (Doc. 20) is GRANTED in part and DENIED in part. BOCC's motion is granted as to Plaintiffs' § 1983 claim against it, and denied in all other respects.

**SO ORDERED this 30th day of March, 2018.**

**TERENCE KERN**
**United States District Judge**