UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENDRA CROCKER AND ALAN MORA, as Co-Guardians of ERIC GRANT, <br><br> Plaintiffs, <br><br> v. <br><br> VIC REGALADO, in his official capacity, *et al.*, <br><br> Defendants. | Case No. 17-CV-149-TCK-FHM |

## OPINION AND ORDER

Before the Court is the Joint Motion to Reconsider (Doc. 62) filed by Defendants Vic Regalado ("Regalado") in his official capacity, the Board of County Commissioners of Tulsa County ("BOCC"), and Armor Correctional Health Services, Inc. ("Armor"). Plaintiffs oppose the motion. (Doc. 67).

**I. Introduction**

This lawsuit arises from the assault and rape of Eric Grant while he was in custody at the Tulsa County Jail. Grant's co-guardians sued former Sheriff Stanley Glanz, in his personal capacity; Vic Regalado, the current Sheriff of Tulsa County, in his official capacity; the BOCC; and Armor, asserting both federal and state court claims. Doc. 2.

The Complaint alleges that Grant, who was arrested June 24, 2015, on a "nonviolent misdemeanor charge of trespassing," was—at the time he was booked—"suffering from obvious, known, and serious mental health disorders, including schizophrenia." *Id*. at 4. Plaintiffs contend that despite this, "personnel at the jail failed to take any of the necessary precautions to protect [him] before putting him into a dangerous correctional setting." *Id*. They allege that although Grant "should have received an immediate evaluation from a mental health specialist, or, at the very least, an immediate referral for a mental health evaluation," he was instead cleared by the Tulsa County Sheriff's Office and Armor Correctional Health Services, Inc.'s staff, to enter the

jail and was placed in general population with a registered sex offender, Anthony Eugene Williams. *Id.* at 4-5. Williams began to harass Grant almost immediately. *Id.* at 5. Grant informed jail personnel about the threats, and for a week prior to the assault and rape by Williams, Grant asked to be transferred to another cell. *Id.* Allen Mora, Grant's co-guardian, also called the jail and informed the Sheriff's Office of the danger to Grant and the need to move him to another cell. *Id.* Plaintiffs allege that on or about July 7, 2015, Williams pulled Grant from his bunk and brutally assaulted and raped him. *Id.* The Complaint alleges that the assault resulted from "longstanding, systemic deficiencies in the medical and mental health care provided to inmates at the Tulsa County Jail," and that Sheriff Stanley Glanz had "long known of these systemic deficiencies and the substantial risks to inmates like Mr. Grant, but ha[s] failed to take reasonable steps to alleviate those deficiencies and risks." *Id.* at 6.

Plaintiffs allege that Grant should not have been placed in a general population cell, but once there, jail and medical staff "should have been on high alert due to substantial risks to [Grant's] safety." *Id.* at 5-6.

Plaintiffs asserted 42 U.S.C. § 1983 and state constitutional violation claims against Glanz, in his official and personal capacities; Regalado in his official capacity, and BOCC and Jane Does No. 1 and 2 (the "Doe Defendants"); and municipal liability and negligence claims against Armor.

Regalado, Glanz, the BOCC and Armor filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docs. 15, 20, 21. The Court denied Glanz's and Regalado's Motions to Dismiss both the official capacity and the individual capacity claims, and granted the Motion to Dismiss the Jane Doe Defendants. Doc. 41. BOCC's motion to dismiss was denied. *Id.* The Court granted Armor's Motion to Dismiss the § 1983 claim, denied its motion to dismiss to the state law claims of negligence and violation of Grant's rights under the Oklahoma constitution, and denied as premature Armor's claim of immunity under the Oklahoma Governmental Tort Claims Act. Doc. 41.

Glanz appealed the Court's denial of his Motion to Dismiss. Doc. 46. On September 24, 2018, the Tenth Circuit Court of Appeals reversed the District Court's decision in part, ruling that

Glanz was entitled to dismissal based on qualified immunity. Doc. 54 (*See Crocker v. Glanz*, 752 Fed. Appx. 564 (10th Cir. 2018) (unpublished)). The mandate issued on October 17, 2018. Doc. 29.

Subsequently, the remaining defendants—Sheriff Regalado, BOCC and Armor—filed the pending motion to reconsider, arguing that based, on the Tenth Circuit's ruling on former Sheriff Glanz's appeal, the § 1983 municipal liability claim against Sheriff Regalado, in his official capacity; the *Bosh* claim against Regalado; the OGTCA/*Bosh* claim against BOCC; and the common law negligence claim against Armor must all be dismissed because the lack of causal connection identified by the Tenth Circuit in the Glanz appeal also defeats the remaining claims. Doc. 62.

## II. Applicable Law

A motion to reconsider may be considered on the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995)). In other words, when the court has "misapprehended the facts, a party's position, or the controlling law," a motion to reconsider is appropriate. *Id.; see Syntroleum Corp.,* 2009 WL 761322, at *1. Parties' efforts to "revisit issues already addressed or advance arguments that could have been raised in prior briefing" will not be considered. *Maul,* 2006 WL 3447629, at *1.

## III. Analysis

### A. Constitutional Claim Against Regalado and BOCC

Glanz moved to dismiss the complaint under Rule 12(b)(6) based on qualified immunity. In denying Glanz's Motion to Dismiss, the court determined that Glanz had failed to "argue that the alleged violation of Grant's constitutional rights was not clearly established," and therefore "focuse[d] [its analysis] only on the first element of qualified immunity: whether the alleged facts show that Glanz plausibly violated Grant's Fourteenth Amendment rights." Doc.41 at 14-15.

Plaintiffs' individual-capacity claim against Glanz was predicated on a theory of supervisory liability. As the Tenth Circuit stated in its Order, "[B]ecause §1983 does not authorize liability under a theory of respondeat superior, '[a] plaintiff arguing for the imposition of supervisory liability . . . must show an affirmative link between the supervisor and the constitutional violation.'" 752 Fed. Appx. at 568 (quoting *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). The appellate court also explained that "'[t]he. . . affirmative link between a supervisor and the alleged constitutional injury has . . . three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id*. The Tenth Circuit concluded that Plaintiffs' complaint failed to allege facts suggesting Grant may have been particularly vulnerable to assault and/or sexual assault, and it faulted the district court's reliance on a report from a government commission on prison rape and a law-review article. *Id.* (pointing out that the Complain itself contained no reference to the report).

Furthermore, the appellate court concluded that even if the Complaint had sufficiently alleged an affirmative link between Glanz's failure to conduct a proper mental-health evaluation and the assault and rape, the claim was still subject to dismissal because plaintiff failed to allege facts showing that Glanz acted with "deliberate indifference to his serious medical needs." *Id.* The court noted that a deliberate indifference claim is comprised of both an objective and subjective component, and explained, "'Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension,'" and "'under the subjective inquiry the prison official must have a sufficiently culpable sate of mind.'" *Id.* (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The Tenth Circuit stated:

> In describing the subjective component, the [Supreme] Court made clear a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 7 (quoting *Self*, 1227 at 1231). The appellate court found that Plaintiffs' allegations as to the subjective component (*i.e.*, that Glanz was aware from several audits that reported the presence of

"widespread problems with physical and mental health care provided to inmates, including the failure to perform mental health screenings and . . . a prevailing attitude of indifference among the medical staff of the Jail") failed the plausibility test because there were no allegations that Glanz was informed that the shortcomings relating to mental health posed a danger to mentally ill inmates of being assaulted by other inmates. *Id.* at 7-8.

The "law of the case doctrine" binds the district court to follow the appellate court's mandate. *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991). The "mandate rule"—a corollary of the law of the case doctrine—requires that a district court "comply strictly with the mandate rendered by the reviewing court." *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 952 F.2d 1528, 1534 (10th Cir. 1992). Accordingly, the Court concludes that— because Plaintiffs' Complaint fails to support a sufficient causal connection between the alleged constitutional violation and the attack on Grant for purposes of a supervisory liability claim against Glanz under § 1983—a municipal liability claim cannot be pursued when there is no underlying constitutional violation. Therefore, Plaintiffs' *Bosh* (Oklahoma constitutional) claims against Regalado, in his official capacity, and BOCC, must be dismissed in accordance with the appellate court mandate.

### B. Negligence Claim Against Armor

A *prima facie* claim of negligence consists of three elements: "(a) a duty owed by the defendant to protect the Plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) Plaintiff's injuries were proximately caused by the defendant's failure to exercise his duty of care." *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 262 (Okla. 1982). Whether the negligent act is the proximate cause of injury depends on the harm being the product of both the natural consequences of that act. *Norman v. Scrivner-Stevens Co.*, 204 P.2d 277, 279. "It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence." *Id.*

The Court, in its Opinion and Order, denied Armor's Motion to Dismiss because the Complaint alleged facts which, taken as true, established that Armor, as the Jail's health care and

mental health care provider, was aware of Grant's mental condition and it was therefore foreseeable that he might be especially vulnerable to sexual violence. Doc. 41 at 11. Armor asserts the Court failed to address whether the Complaint adequately alleged the third element of the negligence claim—*i.e.*, that Plaintiff's injuries were proximately caused by defendant's failure to exercise its duty of care.

However, a recent decision by the Oklahoma Supreme Court, renders Plaintiffs' negligence claim against Armor subject to dismissal on a different basis. In *Barrios v. Haskell County Public Facilities Auth.*, 2018 OK 90 (Okla. Dec. 4, 2018), the state Supreme Court specifically addressed the issue of whether jail healthcare contractors such as Armor and its employees are immune from tort liability under the state's GTCA. 51 O.S. §151 *et seq.* It found that "the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of section 152(7)(b), 153(A), and 155(25)." *Id.*, n. 5 (emphasis added). Based on this finding, the court reasoned that independent contractors who provide health care services to county jails (like Armor), and their staff, should also be considered to be "employees" under the GTCA and are therefore entitled to the same immunity from tort claims. *Id. See also Prince v. Turn Key Health Clinics, LLC*, Case No. 18-CV-282 (N.D. Okla. Jan. 16, 2019), (citing *Barrios* in granting defendant's motion to dismiss a state law negligence claim against a prison health care contractor).

Pursuant to the Oklahoma Supreme Court's ruling in *Barrios*, the Court concludes that the Oklahoma GTCA immunity provisions apply to Armor and its employees, who are therefore exempt from tort liability for Plaintiffs' negligence claim by virtue of 51 O.S. §§ 1572(7)(b), 153(A) and 155(25) (claims arising out of "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility").

Accordingly, Armor's motion to dismiss Plaintiffs' state law claims against Armor must be granted.

### IV. Conclusion

For the reasons set forth above, the Motion to Reconsider (Doc. 69) is granted, and Plaintiffs' claims against Regalado, BOCC and Armor Correctional Health Services, Inc., are dismissed.

ENTERED this 16th day of May, 2019.

_____
TERENCE C. KERN
United States District Judge